Electronically Filed
Intermediate Court of Appeals
28945
27-DEC-2011
01:43 PM

NO. 28945

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


CITY AND COUNTY OF HONOLULU,
a municipal corporation of the State of Hawaiʻi,
Plaintiff-Appellee/Cross-Appellee,
v.
JAMES M. SHERMAN, aka James Malcolm Sherman
and AKIKO S. SHERMAN, aka Akiko Sakiyama Sherman
as Trustee under that certain unrecorded James M. Sherman
and Akiko S. Sherman Revocable Trust dated May 2, 1989, et al.,
Defendants-Appellants/Cross-Appellees,
and
FIRST UNITED METHODIST CHURCH, a Hawaiʻi non-profit corporation,
Defendant-Appellee/Cross-Appellant,
and
JOHN DOE 1-200, et al., Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 03-1-0963)

MEMORANDUM OPINION
(By: Nakamura, C.J., Reifurth and Ginoza, JJ.)

Defendants/Appellants/Cross-Appellees Sherman et al.

(Lessees)[1] appeal from the Final Judgment entered on December 11,

_____

[1] Lessees are: James M. Sherman and Akiko S. Sherman; Jan Camille Bellinger; Clarence K. Lee; Myrna P. Chun-Hoon; George B. Garis; Karen Wilson Rosa; Elizabeth W. Takahashi; Stuart Edwin Gross and Marcia Kurzweil Gross; Kenneth Graham Patterson and Lillian Papacolas Paterson; Moses Masai Lo and Sheila Dickenson Lo; Frank K. Min and Elaine N. Min; Arthur R. King, Jr. and Ruth Mildred King; Ramez Bassir; Paul John Casey and Janice Yoko Casey; George
(continued...)

2007 by the Circuit Court of the First Circuit (Circuit Court).[2] Defendant/Appellee/Cross-Appellant First United Methodist Church (Church) cross-appeals from the Final Judgment.

This is the second appeal in this case, which is a condemnation action initiated by Plaintiff/Cross-Appellee City and County of Honolulu (City) under its eminent domain powers pursuant to Revised Ordinances of Honolulu (ROH) Chapter 38 (1990) seeking lease-to-fee conversion of certain units in the Admiral Thomas condominium. Lessees own leasehold interests in units at the Admiral Thomas. The Church owns the fee interest.

On remand after the first appeal, the Circuit Court ruled on the Church's "Motion For Partial Summary Judgment On The Issue of Lessee Qualifications" and held that certain lessees were not qualified under ROH Chapter 38 to participate in the lease-to-fee conversion. Combined with stipulations to dismiss other lessees, the Circuit Court thus concluded that there were an insufficient number of qualified lessees for the minimum required twenty-five units. The Circuit Court dismissed the City's action.

In this appeal, the Lessees contend that the Circuit Court erred in granting the Church's summary judgment motion and dismissing the action because: (1) the Circuit Court erroneously concluded that the Third Amendment to the Original Designation (Third Amendment) could not be considered when determining whether there were a sufficient number of qualified units under ROH Chapter 38; (2) the Circuit Court erred in concluding that

_____

[1](...continued)
Henry Lumsden and Joanne Chun Lumsden; Ann Takako Yamamoto; Frances M. Watanabe; Meredith Kwock Leong Pang; Neil Simms Bellinger; Wallace Lee Young and Ernestine Ching Young; Joyce A. Hagin and Lawrence Reich; David Patrick Kelly and Keiko Kelly; Patricia Carleen Brown; Randy Neil Yeager and Susan Kaycie Yeager; Gail Suzanne Koglman

[2] The Honorable Victoria S. Marks presided.

2

Wallace Lee Young and Ernestine Ching Young (the Youngs), Clarence Lee (Lee), and Ann Yamamoto (Yamamoto) did not qualify under ROH Chapter 38; and (3) the Circuit Court abused its discretion by failing to use its equitable powers to consider the Third Amendment and to consider Ernestine Young's medical condition when deciding whether she was eligible under Chapter 38.

On cross-appeal, the Church raises two points of error: (1) that the Circuit Court erred in ruling that Lawrence Reich (Reich) and Joyce Hagin (Hagin) and their unit were qualified under ROH Chapter 38, despite the fact that they each owned disqualifying real estate which they transferred to Limited Liability Companies (LLCs) solely owned and controlled by Reich and Hagin, respectively; and (2) that the Circuit Court erred in denying the Church's request for attorneys' fees incurred in the first appeal, which had been made pursuant to Hawaii Revised Statute (HRS) § 101-27 (1993 Repl.).

For the reasons expressed below, we hold that the Circuit Court: (1) correctly did not consider the Third Amendment in determining the qualified number of units; (2) correctly concluded that the Youngs and Lee did not qualify; (3) did not abuse its discretion in not exercising equitable powers; (4) but did abuse its discretion in denying the Church's request for attorneys' fees on the basis that the Circuit Court was not in a position to determine fees incurred in the first appeal.

We need not, and therefore do not, reach the issues of whether the Circuit Court erred: in determining Yamamoto to be disqualified; and in determining Reich and Hagin to be qualified.

I.   **Background**

The City brought this action under ROH Chapter 38, which authorized the condemnation action provided *inter alia* that: "[a]t least 25 of all the condominium owners within the

3

development or at least owners of 50 percent of the condominium units, whichever number is less" apply to the City's Department of Community Services (DCS)[3] to purchase the leased fee interest "pursuant to Section 38-2.4"[4] and file an application with DCS. ROH § 38-2.2. Further, "as long as the minimum number of twenty-five units is continuously maintained, the condemnation retains its public purpose and need not be terminated." City and County of Honolulu v. Sherman, 110 Hawai'i 39, 66, 129 P.3d 542, 569 (2006) (Sherman I); cf., Housing Finance and Development Corp. v. Takabuki, 82 Hawai'i 172, 183, 921 P.2d 92, 103 (1996) (analyzing analogous statute for lease-to-fee conversion of residential houselots).

After initial proceedings and rulings by the Circuit Court, cross-appeals were taken by the Lessees and the Church in the first appeal. In its opinion, the Hawai'i Supreme Court ruled on certain challenges to the City's authority under ROH Chapter 38 and determined that the City had the authority to bring the action,[5] but held that there were genuine issues of

---

[3] ROH Chapter 38 refers to the Department of Housing and Community Development, which was later reorganized into the Department of Community Services.

[4] ROH § 38-2.4(a) includes the lessee qualifications for purchase of the leased fee interest.

[5] The Hawai'i Supreme Court held:

> (1) that ROH ch. 38 does not provide an exception to lease-to-fee conversion of "mixed-use" buildings, (2) that [the Religious Land Use and Institutionalized Person Act of 2000] does not provide a defense to condemnation of the Admiral Thomas condominium units owned in fee simple by the Church, (3) that the City Council did not impermissibly delegate the power of eminent domain to the DCS, (4) that there are genuine issues of material fact as to whether the requisite number of applicant units exists to acquire the fee pursuant to ROH ch. 38, and (5) that [Administrator of the City's Leasehold Conversion Program] Cravalho's affidavits do not run afoul of HRCP Rule 56(e).

(continued...)

material fact "as to whether the requisite number of applicant units exists to acquire the fee pursuant to ROH ch. 38[.]" Sherman I, 110 Hawai'i at 44, 149 P.3d at 547. The supreme court therefore remanded the case for further proceedings, "including a determination as to whether there are the requisite number of qualified applicants, their qualifications to be determined from the date that their applications were filed with the City[.]" Id. at 77, 129 P.3d at 580.

Effective February 9, 2005, while the first appeal was pending, ROH Chapter 38 was repealed by the Honolulu City Council (City Council). Ordinance 05-001 (2005) (Ordinance 05-001). However, this eminent domain action fell within the scope of an exception to the repeal. Sherman I, 110 Hawai'i at 42 n.1, 129 P.3d at 545 n.1 ("the repeal of ROH Ch. 38 does not affect the present matter, inasmuch as the City Council had already authorized the eminent domain proceeding at issue.").

On remand to the Circuit Court, the Church filed its partial summary judgment motion seeking a ruling that there were not qualified lessees for at least twenty-five units and that the condemnation action must therefore be dismissed. As noted by the Circuit Court, between January 2004 and September 2006, there were stipulations filed dismissing various lessees and a total of eight units from the case.[6] The Circuit Court also made the following findings of fact (FOF) and conclusions of law (COL) pertinent to this appeal:

---

[5](...continued)
Sherman I, 110 Hawai'i at 44, 129 P.3d at 547.

[6] One unit was dismissed by stipulation prior to the first appeal and seven units were dismissed by stipulation after remand to the Circuit Court.

FINDINGS OF FACT

1.    There are no genuine issues of material fact.

2.    The Defendant Lessees are, or were, the lessees of the units at the Admiral Thomas condominium which are, or were, the subject of this condemnation action.

. . .

7.    The Court finds that the following Defendant Lessees and their units are not qualified:

(a)    Defendant WALLACE LEE YOUNG and ERNESTINE CHING YOUNG (Unit 503) rented Unit 503 to Dr. Lynn Ashby from August 1, 2001, to the end of August, 2002, and did not have possession of Unit 503 for the twelve-month period preceding the date of the filing of their application with the Department of Community Services to acquire the leased fee.

(b)    The spouse of Defendant CLARENCE K. LEE (Unit 704), Elsa Lee, acquired an interest in fee simple residential real property in the City and County of Honolulu after the date that Mr. Lee filed his Chapter 38 application.

(c)    On the date that her Chapter 38 Application was received by the City, Defendant ANN TAKAKO YAMAMOTO (Unit 2905) owned an interest in fee simple residential real property in the City and County of Honolulu.

8.    Defendants LAWRENCE REICH and JOYCE A. HAGIN (Unit 2001) each owned a fee simple residential property in the City and County of Honolulu, but transferred those properties to single-member, single-purpose limited liability companies owned and controlled by them prior to the date they filed their Chapter 38 Application.

9.    On April 20, 2004 the Director of the DCS designated the leased fee interests appurtenant to an additional five units at the Admiral Thomas for acquisition by the City ("Third Amendment to Designation"). The City Council did not approve condemnation of the five additional units prior to the repeal of Revised Ordinances of Honolulu (1990) Chapter 38 ("Chapter 38").

10.    Subtracting the three disqualified units described in paragraph 7 above from the remaining units leaves a total of 22 units in this condemnation action.

11.    The Court finds that there have not continuously been qualified lessees for at least 25 units.

6

12. If any of the above Findings of Fact shall be deemed to be Conclusions of Law, the Court intends that every such Finding of Fact shall be construed as a Conclusion of Law.

CONCLUSIONS OF LAW

1. Under Housing Finance and Development Corporation v. Takabuki, 82 Hawai'i 172, 921 P.2d 92 (1962), Coon v. City and County of Honolulu, 98 Hawai'i 233, 47 P.3d 348 (2002), City and County of Honolulu v. Ing, 100 Hawai'i 182, 58 P.3d 1229 (2002), City and County of Honolulu v. Hsiung, 109 Hawai'i 159, 124 P.3d 434 (2005), and City and County of Honolulu v. Sherman, 110 Hawai'i 39, 129 P.3d 542 (2006), there must be qualified lessees for at least 25 units continuously throughout the legal proceedings to acquire the fee. If the class of qualified lessee applicants whose units have been designated falls below the statutory minimum number of 25 units, for whatever reason, the proceedings must be terminated.

2. Because the Third Amendment to Designation was not approved by the City Council prior to the repeal of Chapter 38, it does not constitute a valid designation for purposes of evaluating whether the numerosity requirements of Chapter 38 have been satisfied. Section 3.(a), Ordinance 05-001.

3. Defendants WALLACE LEE YOUNG, and ERNESTINE CHING are not qualified because they do not meet the definition of "owner-occupant" set forth in Revised Ordinances of Honolulu (1990) ("R.O.H.") § 38-1.2.

4. Defendant CLARENCE K. LEE (Unit 704) is not qualified because he does not meet the requirements of R.O.H. § 38-2.4(a)(4).

5. Defendant ANN TAKAKO YAMAMOTO (Unit 2905) is not qualified because she does not meet the requirements of R.O.H. § 38-2.4(a)(4).

6. Defendants LAWRENCE REICH and JOYCE A. HAGIN (Unit 2001) are qualified.

7. As there are not qualified lessees for at least 25 units, this condemnation action must be dismissed.

8. If any of the above Conclusions of Law shall be deemed to be Findings of Fact, the Court intends that every such Conclusions of Law shall be construed as a Finding of Fact.

On December 11, 2007, the Circuit Court entered, inter alia, final judgment in favor of the Church and against the City and Lessees as to all claims alleged in the First Amended Complaint, which sought condemnation. The Circuit Court also

awarded the Church a part of the attorneys' fees and costs it had requested, but which did not include the Church's request for attorneys' fees incurred in the first appeal.

## II. Standards of Review

### A. Summary Judgment

The standard of review for grants or denials of summary judgment is *de novo* review. Sherman I, 110 Hawai'i at 48, 129 P.3d at 551 (citing Haw. Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Sherman I, 110 Hawai'i at 48-49, 129 P.3d at 551-52 (citations and internal quotation marks omitted).

### B. Statutory Interpretation

The standard of review for the circuit court's interpretation of a statute is *de novo*. Sherman I, 110 Hawai'i at 49, 129 P.3d at 552; City and County of Honolulu v. Hsiung, 109 Hawai'i 159, 170, 124 P.3d 434, 445 (2005) (citations omitted). "[W]hen interpreting municipal ordinances, we apply the same rules of construction that we apply to statutes." Hsiung, 109 Hawai'i at 172, 124 P.3d at 477 (quoting Coon v. County of Honolulu, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002)). The court's statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

Sherman I, 110 Hawai'i at 51, 129 P.3d at 554 (citing Coon 98 Hawai'i at 245, 47 P.3d at 360).

C.    **Inherent Powers**

Both a trial court's exercise of its inherent powers and its failure or refusal to exercise its inherent powers is reviewed under an abuse of discretion standard. Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawai'i 494, 508, 880 P.2d 169, 183 (1994) (citing Kukui Nuts of Haw., Inc. v. R. Baird & Co., 6 Haw. App. 431, 438, 726 P.2d 268, 272 (1986)).

D.    **Conclusions of Law**

A trial court's conclusions of law are reviewed *de novo* under the right/wrong standard:

> Under this standard, [we] examine the facts and answer the question without being required to give any weight to the trial court's answer to it. Thus, a conclusion of law is not binding upon the appellate court and is freely reviewable for its correctness.

State v. Ortiz, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (internal citations, quotation marks, brackets, and block quotation format omitted).

E.    **Award of Attorneys' Fees and Costs**

The award of attorneys' fees and costs are reviewed under the abuse of discretion standard.

> This court reviews the trial court's grant or denial of attorneys' fees and costs under the abuse of discretion standard. Price [v. AIG Hawaii Ins. Co.], 107 Hawai'i [106,] 110, 111 P.3d [1,] 5 [2005] (citations omitted).

9

> The trial court abuses its discretion if it
> bases its ruling on an erroneous view of the law
> or on a clearly erroneous assessment of the
> evidence.  Stated differently, an abuse of
> discretion occurs where the trial court has
> clearly exceeded the bounds of reason or
> disregarded rules or principles of law or
> practice to the substantial detriment of a party
> litigant.

Id. (citations omitted).

Enoka v. AIG Hawaii Ins., Co., 109 Hawai'i 537, 544, 128 P.3d 850, 857 (2006) (materials in brackets added).

## III. Discussion[7]

### A.    Third Amendment

Lessees argue that, given the framework set out in Sherman I for considering the numerosity requirement, the Circuit Court erred in concluding, as a matter of law, that the Third Amendment could not be considered in determining whether the minimum of twenty-five units was maintained throughout the litigation.  It is uncontested that on April 20, 2004, DCS designated the leased fee interests for five additional units at the Admiral Thomas for acquisition by the City, but that the City Council never approved condemnation of the five additional units.

Ordinance 05-001, promulgated while the first appeal was pending, expressly states:

> This ordinance shall not affect any eminent domain
> proceeding for the acquisition of units validly designated
> in projects, the condemnation of which units was approved by
> the council by resolution before the effective date of this
> ordinance.  Such an eminent domain proceeding may be

---

[7]  The points of error raised in Lessees' opening brief do not meet the requirements of Hawai'i Rules of Appellate Procedure (HRAP), Rule 28(b)(4) because they fail to state "where in the record the alleged error occurred" and "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court[.]"  We may therefore disregard the points raised by Lessees.  HRAP Rule 28(b)(4); In re Contested Case Hearing on Water Use Permit Application Filed by Kukui (Molokai), Inc., 116 Hawai'i 481, 506, 174 P.3d 320, 345 (2007).  Even considering the points raised, we conclude that Lessees do not prevail in their appeal.  Counsel for Lessees is cautioned to comply with HRAP Rule 28(b)(4) in the future.

10

> instituted or, if already instituted, continued after the
> effective date of this ordinance in accordance with Chapter
> 38, ROH, as existing on the day before the effective date of
> this ordinance. . . "Valid designation" means a designation
> of specific units in a development for leasehold conversion
> and subsequent approval for condemnation by the council that
> complied with Chapter 38, ROH, as existing on the day before
> the effective date of this ordinance and construed by the
> Hawaii Supreme Court in Coon v. City and County of Honolulu,
> 98 Haw. 233, 47 P.3d 348 (2002).

(Emphasis added). Under the plain language of this ordinance, the exception to the repeal of ROH Chapter 38 only applies to those units which were approved for condemnation by the City Council prior to the effective date of Ordinance 05-001. It is undisputed that the five units designated in the Third Amendment were not so approved for condemnation by the City Council.

This eminent domain proceeding continued because the City Council had already authorized condemnation of the units involved in the first appeal prior to the effective date of Ordinance 05-001. Sherman I, 110 Hawai'i at 42 n.1, 129 P.3d at 545 n.1. Notwithstanding the explicit requirement in Ordinance 05-001 for City Council approval to avoid the repeal of ROH Chapter 38, the Lessees argue it is the DCS designation in the Third Amendment, not City Council approval, that determines whether to count the five units in the Third Amendment toward the minimum requirement of twenty-five units. They base their argument on the following discussion in Sherman I:

> [I]f the numerosity requirement was met when first
> designated, then any properly added applicant-units may
> count toward the continuous maintenance of the minimum
> twenty-five units. In other words, if the lessees
> maintained at least twenty-five qualified units up to the
> date of an amended designation, then the number from the
> initial designation is added to the number of the amended
> designation for a total number of qualified units. If,
> thereafter, a unit drops out of the condemnation process or
> the lessee of another unit passes away, as long as the
> minimum number of twenty-five units is continuously
> maintained, the condemnation retains its public purpose and
> need not be terminated. Conversely, if there are not a
> minimum of twenty-five qualified units initially, then the
> addition of units with an amended designation is moot,
> inasmuch as the added units cannot cure the initial

> numerosity deficiency and the condemnation process must be terminated. As we have indicated, this conclusion is supported by the foregoing case law and we likewise find no language in ROH ch. 38 that would preclude (1) the addition of qualified units by amended designation or (2) the enumeration of those added units toward the requirement that twenty-five qualified units must be continuously maintained.
>
> Therefore, the City's amended designation adding six units could not serve to increase a previously insufficient number of qualified applicant-units to the minimum twenty-five applicant-units necessary to initiate ROH ch. 38 proceedings. Conversely, the amendment of the original designation would allow added qualified applicant-units to count toward the previously existing minimum qualified twenty-five units continuously necessary for ROH ch. 38 proceedings.

Sherman I, 110 Hawai'i at 66-67, 129 P.3d at 569-70. This discussion in Sherman I was necessary to address and reject the Lessees' position that "they can make up for any deficiency in the initial requirement of twenty-five units at the outset if they properly add more qualifying units later." 110 Hawai'i at 65, 129 P.3d at 568. This part of Sherman I does not dispense with the requirement of City Council approval, nor does it require that the Third Amendment be considered for the numerosity requirement.

The Third Amendment was not considered in Sherman I. Rather, Sherman I specifically addressed only the originally designated twenty-eight units and the additional six units that were added for conversion in this action. Id. at 43, 129 P.3d at 546. Before the lessees for these thirty-four units were made parties to this condemnation proceeding, the City Council had previously authorized such action for these units.[8] In short, there was no question that City Council approval had already been

---

[8] For the originally designated twenty-eight units, the City Council authorized the initiation of this eminent domain action for those units by Resolution 02-301, effective December 19, 2002, and the complaint was thereafter filed on May 8, 2003. For the additional six units, the lessees for those units were added as parties to this case by way of an amended complaint after the City Council had approved condemnation of those units.

obtained for these units, and it was in this context that Sherman I discussed the numerosity requirement.

Additionally, Sherman I clearly recognized the necessity of City Council approval for condemnation under ROH Chapter 38. In addressing an issue raised by the Church, the court held that the City Council had not improperly delegated the power of eminent domain to the DCS, reiterating its prior holding that ROH § 38-2.2 "empower[s] the DCS to *designate* land for acquisition by the City, which 'merely *facilitates* the City's acquisition of the land subject to the decision of the City, through its City Council, actually to *exercise* the power of eminent domain.'" Id. at 70, 129 P.3d at 573 (quoting Richardson, 76 Hawai'i at 58, 868 P.2d at 1205); see also ROH § 2.2(a).

We conclude that the Circuit Court was correct, as a matter of law, that the Third Amendment could not be considered when determining whether there were a sufficient number of qualified units under ROH Chapter 38. The units listed in the Third Amendment have never been approved for condemnation by the City Council.

B.    **Qualifications of the Youngs, Lee, and Yamamoto**

Lessees argue in their second point of error that the Circuit Court incorrectly held that Wallace Lee Young and Ernestine Ching Young, Clarence Lee, and Ann Yamamoto were not qualified lessees under ROH Chapter 38.

1.    **Wallace Lee Young and Ernestine Ching Young**

One of the requirements to qualify under ROH § 38-2.4(a) is that a lessee must be an "owner-occupant" of his or her condominium unit. In turn, "owner-occupant" is defined as follows:

> [A]ny individual in whose name sole or joint legal title is
> held in a residential condominium unit . . . which,
> simultaneous to the individual's ownership, serves as the

> individual's <u>principal place of residence for a period of not less than one year immediately prior to application for conversion, as well as during the period pending legal proceedings to acquire the fee</u>; provided, that the individual shall <u>retain complete possessory control</u> of the premises of the residential unit during these periods. <u>An individual shall not be deemed to have complete possessory control of the premises if the individual rents, leases, or assigns the premises for any period of time to any other person in whose name legal title is not held</u>. Proof of residency and possessory control shall be as established by rules adopted by the department.

ROH § 38-1.2 (emphasis added).

Lessees acknowledge that Wallace Lee Young and Ernestine Ching Young filed their application with DCS on December 26, 2002. It is not disputed that they rented their unit to another person from August 1, 2001 to the end of August 2002 and that they did not have possession of the unit for the twelve months immediately prior to filing their application with DCS. Although Ms. Young's illness was an unfortunate circumstance that allegedly led to the Youngs' decision to rent their unit, and DCS asserts it could have advised Mrs. Young to file the application after she had resumed living in the unit for a year, the Youngs did not disclose the rental of their unit to DCS.

Given these undisputed facts, the Circuit Court did not err in concluding that the Youngs did not qualify under ROH § 38-2.4(a) because they did not meet the definition of "owner-occupant" set forth in ROH § 38-1.2.

### 2. Clarence Lee

Under ROH § 38-2.4(a)(4), lessees are not qualified to purchase the leased fee interest of their condominium unit if they:

14

own property in fee simple lands suitable for residential purposes within the City and County of Honolulu . . . . A person is deemed to own lands, for the purpose of this paragraph, if the person, <u>the person's spouse</u>, or both the person and the person's spouse . . . own lands, including any interest, in a land trust in the City and County of Honolulu.

(Emphasis added).

Elsa Carl Lee is the wife of Clarence Lee. It is undisputed that after Mr. Lee filed his application with DCS, Mrs. Lee assisted her daughter in purchasing a fee simple residential property in Kailua, and that for a time she held title in the Kailua property as a joint tenant with her daughter.

Lessees initially point out that Mrs. Lee is not an applicant or lessee under ROH Chapter 38, and that the leasehold interest in the subject unit is held by Clarence K. Lee, as Trustee of and for the Clarence K. Lee Revocable Living Trust. Neither of these points undermine the Circuit Court's ruling disqualifying Clarence Lee. In <u>Coon</u>, the supreme court held that "condominium owner-occupants are not barred from purchasing their leased fee interests pursuant to ROH ch. 38 simply because legal title to their condominium units is held in trust for their benefit, <u>so long as they otherwise qualify for lease-to-fee conversion</u>." 98 Hawaiʻi at 260, 47 P.3d at 375 (emphasis added). Thus, Clarence Lee must meet the qualifications of ROH Chapter 38. Under ROH § 38-2.4(a)(4), his spouse's ownership of fee simple residential property in Honolulu affects his qualification.

Lessees argue that Clarence Lee should not have been disqualified because his wife never: lived in, resided in, or occupied the Kailua property; intended to live in, reside in, or occupy the Kailua property; considered the Kailua property suitable for residential purposes; exercised physical control or possession of the Kailua property; or claimed the Kailua property as her own. Lessees also argue that the Kailua property was not

15

suitable for the Lee's residential purposes because it contained a six-hundred square foot home.

Similar arguments were rejected in Hsiung, where it was asserted that lessee Poag should not have been disqualified for owning fee simple residential property because he owned it for business purposes and the structure on the property was not habitable while he owned it. The supreme court focused on the plain language of ROH § 38-2.4 and thus the *reason* Poag owned the fee simple residential property was of no consequence, so long as the record established that he owned such property within the City and County of Honolulu. 109 Hawaiʻi at 171-72, 124 P.3d at 446-47.

Moreover, as to Poag's argument that the structure on the property was not habitable, the Hsiung court ruled that: "[T]he relevant inquiry under ROH § 38-2.4 centers around the character of the land itself – whether the property can be used for residential purposes or dwelling unit purposes. Under the plain language of the ordinance, the *habitability* of any structures atop land suitable for residential purposes is not relevant." 109 Hawaiʻi at 171, 124 P.3d at 446. Here, it is undisputed that the Kailua property was fee simple residential property. Further, although the structure on the Kailua property was six-hundred square feet, the land was over five-thousand square feet.

The Circuit Court did not err in holding that Clarence Lee did not meet the requirements of ROH § 38-2.4(a)(4) because his wife acquired an interest in fee simple residential property in the City and County of Honolulu.

### 3. Ann Yamamoto

Based on our rulings above, that the Circuit Court properly did not consider the units in the Third Amendment for the numerosity requirement and properly determined that the

16

Youngs and Lee did not qualify under ROH Chapter 38, there would be twenty-three units remaining in this condemnation action. Whether Yamamoto qualifies or not, Lessees are thus not able to establish the required continuing minimum number of twenty-five units to maintain this action. We therefore need not reach the issues raised as to Yamamoto.

C.    **Equitable Powers**

The Lessees' third point of error on appeal is that the Circuit Court abused its discretion in failing to exercise its equitable powers to consider the Third Amendment and Ernestine Young's medical condition. Given the provisions of ROH Chapter 38, the Circuit Court did not abuse its discretion. Matter of Spencer's Estate, 60 Haw. 497, 499, 591 P.2d 611, 613 (1997) ("We have said that this court is bound by the plain, clear and unambiguous language of a statute unless the literal construction would produce an absurd and unjust result and would be clearly inconsistent with the purposes and policies of the statute.") (citation omitted).

Lessees cite no authority for the proposition that a court can use its equitable power to rewrite a statute. Cases construing ROH Chapter 38 have consistently looked to the plain language of its provisions in determining parties' rights thereunder. See Sherman I, 110 Hawai'i at 52, 68, 129 P.3d at 555, 571; Hsiung, 109 Hawai'i at 171-73, 124 P.3d at 446-448; Richardson, 76 Hawai'i at 58, 868 P.2d at 1205; Coon, 98 Hawai'i at 247-48, 47 P.3d at 362-63. As noted above, the plain language of ROH § 38-2.4(a) and the definition of "owner-occupant" in ROH § 38-1.2 precluded Wallace and Ernestine Young from qualifying. Additionally, the Youngs's application to DCS did not disclose the rental of their unit in the year prior, and applying equitable principles would not in any event be appropriate in such circumstances.

17

As to Lessees' argument that the Circuit Court should have exercised its equitable powers in light of the procedural history of this case, we do not agree. Lessees speculate that but for the Circuit Court's dismissal of the case in June 2004, the units designated in the Third Amendment would have been added to this action before the repeal of ROH Chapter 38. They do not point to any evidence in the record to support this claim. More importantly, as discussed previously, Ordinance 05-001 clearly provides an exemption from the repeal of ROH Chapter 38 only for units approved for condemnation by the City Council before the effective date of that ordinance. This was a legislative decision made by the City Council while the first appeal was pending.

Similarly, the plain language of ROH Chapter 38 provides that to be qualified, a lessee must be an "owner-occupant" not less than one year prior to application "as well as during the period pending legal proceedings to acquire the fee[.]" As stated in Sherman I, "as long as the minimum number of twenty-five units is continuously maintained, the condemnation retains its public purpose and need not be terminated." 110 Hawai'i at 66, 129 P.3d at 569. The provisions of ROH Chapter 38 thus require that the minimum number of qualified lessees be maintained throughout the litigation. The Circuit Court did not abuse its discretion by applying the legal criteria set forth in ROH Chapter 38 and as interpreted by prevailing case law.

D.  **Church's Cross-Appeal Regarding Lawrence Reich and Joyce Hagin**

Lawrence Reich and Joyce Hagin are Lessees for one unit. In its cross-appeal, the Church contends that the Circuit Court erroneously concluded that Reich and Hagin, and their unit, qualified under ROH Chapter 38, despite the fact that they had owned fee simple residential property in the City and County of

18

Honolulu which they transferred to LLCs, owned and controlled by them, prior to filing their application with DCS.

As explained with regard to Yamamoto, because of our rulings above regarding the Third Amendment and the disqualification of the Youngs and Lee, Lessees are not able to establish the required continuing minimum number of twenty-five units to maintain this action. Even if we were to agree with the Church as to Reich and Hagin, it would only further reduce the number of qualified units. We therefore need not reach the issues as to Reich and Hagin raised on appeal by the Church.

E.   **Church's Request for Attorneys' Fees for the First Appeal**

After the Circuit Court ruled that the condemnation action would be dismissed because there were insufficient qualified Lessees to meet the twenty-five unit requirement, the Church filed a motion to determine damages incurred pursuant to HRS § 101-27. The Circuit Court ultimately awarded part of the Church's request, but denied the attorneys' fees that the Church claimed to have incurred during the first appeal. The Circuit Court explained that: "This trial court is not in a position to determine the reasonableness of fees incurred in an appeal – that is for the appellate courts. Therefore, this court denies the fees that [the Church] claims were incurred on appeal in the amount of $69,114.50."

In this appeal, the Church urges that the Circuit Court was in error and that it properly should have decided the request for fees incurred by the Church in the first appeal. Given the procedural history of this case and the statute authorizing the damages, HRS § 101-27, we agree.

The Church requested the attorneys' fees as damages sustained due to the condemnation action. HRS Chapter 101, Part I, deals with the condemnation of private property.

19

HRS § 101-27, which is contained in Part I of HRS Chapter 101, provides in relevant part:

> Whenever any proceedings instituted under this part are abandoned or discontinued before reaching a final judgment, or <u>if, for any cause, the property concerned is not finally taken for public use</u>, a defendant who would have been entitled to compensation or damages had the property been finally taken, shall be entitled, in such proceedings, to recover from the plaintiff <u>all such damage as may have been sustained by the defendant by reason of the bringing of the proceedings</u> and the possession by the plaintiff of the property concerned if the possession has been awarded including the defendant's costs of court, a reasonable amount to cover attorney's fees paid by the defendant in connection therewith, and other reasonable expenses[.]

(Emphasis added). The dispute in this appeal focuses on whether the Circuit Court properly should have decided the attorneys' fees request related to the first appeal.[9] The City argues that: the Circuit Court lacked jurisdiction to award the Church's attorneys' fee incurred on appeal; the Church failed to make a timely (or any) request for the fees to the Hawai'i Supreme Court as required by HRAP Rule 39; and at any rate, the Church was a non-prevailing party in the first appeal and thus not entitled to fees under HRAP Rule 39.

In <u>County of Hawai'i v. C&J Coupe Family Ltd. P'ship</u>, 120 Hawai'i 400, 208 P.3d 713 (2009),[10] the Hawai'i Supreme Court considered a landowner's request pursuant to HRS § 101-27 for statutory damages, including attorneys' fees and costs, incurred on appeal. In that case, two separate condemnation actions had been consolidated and decided together. In Condemnation 1, it had been determined that the landowner was entitled to statutory damages under HRS § 101-27 because the property at issue was "not

---

[9] There is no appeal challenging that part of the Circuit Court's judgment that did award attorneys' fees, costs, and expenses.

[10] <u>C&J Coupe Family</u> was decided after the appeals and the briefings were filed in this case.

finally taken" in Condemnation 1.[11] Id. at 403, 208 P.3d at 716. The supreme court ruled that damages under HRS § 101-27 included fees and costs incurred *on appeal* in Condemnation 1, and further, that the procedure set forth in HRAP 39 would be followed *vis-a-vis* the Condemnation 1 appellate fees and costs. Id. at 405-06, 208 P.3d at 718-19. In that context, the court noted that "if HRS § 101-27 and HRAP Rule 39 can be read *in pari materia* without conflict, then this court must give effect to both." Id. at 405, 208 P.3d at 718 (underline emphasis added).

Important for the instant case, however, the supreme court in C&J Coupe Family noted a significant distinction with respect to the landowner's attorneys' fees incurred on appeal in Condemnation 2, in which it was *still to be determined whether the land would be taken.*

> Appellant apparently has not requested costs under Hawai'i Rules of Appellate Procedure (HRAP) Rule 39 for the appeal of Condemnation 2. As for attorneys' fees, Appellant has properly recognized that, at least at this point, there is no basis for recovery of fees in Condemnation 2. HRS § 101-27 allows recovery only where the land is "not finally taken." Considering that Condemnation 2 has been remanded for a determination of whether the land was condemned pursuant to a proper public purpose, it is yet to be determined whether the land in that case will be "finally taken." HRAP Rule 39 only provides for recovery of *costs* on appeal and, therefore, offers no authority in and of itself for the recovery of attorney's fees, although it governs the procedure by which to move for those fees in this court where they can be claimed on a separate basis.

Id. at 404 n.3, 208 P.3d at 717 n.3 (emphasis added). The supreme court thus recognized that the landowner could not seek attorneys' fees as damages under HRS § 101-27 until it was ultimately determined that "the property concerned is not finally taken for public use." HRS § 101-27.

---

[11] This issue and substantive challenges to Condemnation 2 were addressed in a prior opinion by the Hawai'i Supreme Court in County of Hawai'i v. C&J Coupe Family Ltd. P'ship, 119 Hawai'i 352, 198 P.3d 615 (2008).

The first appeal in this case is akin to the Condemnation 2 appeal in C&J Coupe Family. In both, the supreme court had decided certain issues on appeal and remanded the case for further proceedings to ultimately determine whether the condemnation actions would succeed. After the initial appeals in both cases, it was uncertain whether the property at issue would be taken and thus it was not possible to yet determine the landowner's right to damages as allowed under HRS § 101-27.

The question in this appeal and not addressed in C&J Coupe Family is, if on remand the property ultimately is not taken and the landowner is entitled to damages under HRS § 101-27, whether the Circuit Court may determine the damages incurred during the initial appeal. We answer in the affirmative. In that situation, there would be a conflict between HRS § 101-27 and HRAP 39 and requiring the request for fees to be made to the appellate court in the initial appeal would be fruitless, because it would be uncertain at that point whether such fees were authorized under HRS § 101-27.

Although dealing with a different authorizing statute, Nelson v. University of Hawai'i, 99 Hawai'i 262, 54 P.3d 433 (2002) is instructive. There, after an initial appeal vacated the trial court's judgment in favor of the defendant and the case was remanded for a new trial on employment discrimination claims, the plaintiff requested attorneys' fees incurred in the appeal pursuant to HRS § 378-5(c) (1993 Repl.). The supreme court held that the plaintiff was not yet entitled to such fees given the requirements of the fee-shifting statute. For plaintiff to obtain fees under HRS § 378-5(c), there needed to be a

> favorable relief or damages that follow as a result of a finding that the defendant engaged in a discriminatory practice. Consequently, a judgment on appeal that merely vacates a trial court judgment unfavorable to the plaintiff and places the plaintiff back where the plaintiff started does not, in itself, provide any grounds for an award of fees to the plaintiff.

22

99 Hawai'i at 266, 54 P.3d at 437. Although the plaintiff sought to have the supreme court determine the reasonableness of the fees incurred on appeal, the supreme court ruled that if the plaintiff should ultimately win on some or all of her claims, the trial court should determine her entitlement to the fees incurred during the initial appeal.

> [B]ecause this court will no longer have jurisdiction over the case in such an instance, the *trial* court will then have to determine the reasonableness of fees incurred during the present appeal.
>
> . . .
>
> We agree with Nelson that, as a general rule, it would be preferable for this court to determine the reasonableness of attorneys' fees incurred for work performed in this appeal, rather than leaving the task to a future trial court should the hypothetical situation she poses arise. . . . However, we do not believe that the foregoing consideration merits adopting an interpretation of HRS § 378-5(c) that would require this court to award fees in circumstances, such as those here, where the plaintiff ultimately may not prevail and would therefore not be entitled to such fees. Although, as previously stated, it would be preferable for this court to determine the reasonableness of fees incurred for appellate work, such a consideration does not warrant perverting the intent of HRS § 378-5(c) in the first place. . . . Accordingly, should Nelson succeed on some or all of her claims on remand, and this court does not again acquire jurisdiction over the case, the trial court can assess the reasonableness of attorneys' fees for work done in the instant appeal. Nothing in the language of HRS § 378-5(c) suggests to the contrary.

99 Hawai'i at 268-69, 54 P.3d at 439-40.

Therefore, we conclude that the Circuit Court abused its discretion in denying the Church's request for attorneys' fees incurred in the first appeal on grounds that it was "not in a position to determine the reasonableness of fees incurred in an appeal." Under C&J Coupe Family and Nelson, and given the procedural history of this case, the Circuit Court should address the merits and decide the Church's request for attorneys' fees incurred in the first appeal.

## IV.  Conclusion

For the foregoing reasons, we vacate that part of the December 11, 2007 Final Judgment and the Circuit Court's March 28, 2007 Order that denied the Church's request for attorneys' fees as damages incurred in the first appeal.  We remand for further proceedings consistent with this opinion to determine damages incurred in the first appeal pursuant to HRS § 101-27.

We decline to reach the Lessees' point of error pertaining to Yamamoto and the Church's point of error pertaining to Reich and Hagin.

Except as set forth above, we affirm the Final Judgment.

DATED:  Honolulu, Hawai'i, December 27, 2011.

David A. Nakashima
J. Blaine Rogers
(Lerisa L. Heroldt with
  David A. Nakashima
  on the briefs)
(Alston Hunt Floyd & Ing)
for Defendants-Appellants/
  Cross-Appellees

James K. Mee
(Rosemary T. Fazio and
  Kevin W. Herring with
  him on the briefs)
(Ashford & Wriston, LLP)
for Defendant-Appellee/
 Cross-Appellant

Winston K. Q. Wong,
Deputy Corporation Counsel,
City and County of Honolulu
and Lex R. Smith,
Jesse W. Schiel
(Kobayashi, Sugita & Goda)
on the brief for Plaintiff-Appellee/
  Cross-Appellee

*Craig H. Nakamura*
Chief Judge

*Lawrence M Reifurth*
Associate Judge

*Alexa Fujise*
Associate Judge

24